**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

NOVO NORDISK INC.,

     Plaintiff,

     v.

AESTHETIC MAISON LLC; and
AESTHETIC CASA LLC,

     Defendants.

Case No. 4:24-cv-2036

## <u>COMPLAINT</u>

Plaintiff Novo Nordisk Inc. ("Plaintiff" or "Novo Nordisk"), by and through its attorneys, Bowman and Brooke LLP and Covington & Burling LLP, files this Complaint against Defendants Aesthetic Maison LLC ("Aesthetic Maison") and Aesthetic Casa LLC ("Aesthetic Casa") (together, "Defendants") to enjoin Defendants from their unlawful, false, and misleading business practice of falsely advertising a non-FDA approved drug that claims to contain semaglutide and providing that drug to customers without a prescription in powder form to mix themselves without instruction, which poses potential significant risks to patient health.  Novo Nordisk does not seek through this lawsuit money damages arising from Defendants' past practice of selling these drugs, but only to prevent Defendants from continuing this practice, which puts patients at potential risk, and alleges the following:

## I.    <u>FACTUAL ALLEGATIONS</u>

### A.    <u>Novo Nordisk Is the Only Company in the U.S. with FDA-Approved Drugs Containing Semaglutide</u>

1.    Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.    The development of semaglutide is an example of this commitment to innovation

for people living with chronic diseases.  Semaglutide is the foundational molecule which serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):

- Wegovy® (semaglutide) injection 2.4 mg, for chronic weight management;

- Ozempic® (semaglutide) injection 0.5 mg, 1 mg, or 2 mg, for adults with type 2 diabetes; and

- Rybelsus® (semaglutide) tablets 7 mg or 14 mg, for adults with type 2 diabetes.

3.    Wegovy® is an injectable medication indicated to reduce excess body weight and maintain weight reduction long-term in adults and children aged $\geq 12$ years with obesity, and some adults that are overweight with weight-related medical problems, along with a reduced calorie diet and increased physical activity.  Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as cardiovascular death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

4.    Ozempic® is an injectable medication and Rybelsus® is an oral medicine that are indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.  Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack or death in adults with type 2 diabetes and known heart disease.

5.    Each of Wegovy®, Ozempic®, and Rybelsus® has a unique safety and efficacy profile which is detailed in its respective product label.

6.    Wegovy®, Ozempic®, and Rybelsus® are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

7.    Wegovy®, Ozempic®, and Rybelsus® have been extensively studied in clinical trials

and are FDA-approved for the treatment of patients with serious chronic diseases.

8.    Novo Nordisk is the only company in the U.S. with FDA-approved products containing semaglutide.  FDA has not approved any generic versions of semaglutide.

9.    Novo Nordisk does not sell its semaglutide active pharmaceutical ingredient ("API") to Defendants or any other online retailers for the purpose of selling unapproved semaglutide products.

**B.    Distribution of Prescription Drugs Without a Prescription Exposes Patients to Potentially Serious Health Risks**

10.    Selling drugs through online websites without requiring a prescription puts consumers at risk.  These websites may sell products that, while being passed off as authentic, "may contain too much or too little of the active ingredient, contain the wrong ingredients altogether, or even contain harmful substances."[1]  Consumers who purchase prescription drugs online "may put their health at risk because the products, while being marketed as authentic, may be counterfeit, contaminated, expired or otherwise harmful."[2]  Historically, because states have regulated pharmacies and the practice of medicine, several states, including Texas, have prosecuted online companies and individuals dispensing prescription drugs without a valid prescription.[3]

---

[1] FDA, *Navigating the World of Online Pharmacies with CDR Lysette Deshields* (last updated Mar. 7, 2024), https://www.fda.gov/drugs/news-events-human-drugs/navigating-world-online-pharmacies-cdr-lysette-deshields.

[2] FDA, *FDA and DEA Warn Online Pharmacies Illegally Selling Adderall to Consumers* (last updated Apr. 12, 2022), https://web.archive.org/web/20231130063836/https://www.fda.gov/news-events/press-announcements/fda-and-dea-warn-online-pharmacies-illegally-selling-adderall-consumers.

[3] United States House of Representatives, *Prepared Statement of the Federal Trade Commission on "The Internet Sale of Prescription Drugs from Domestic Websites" Before the Committee on Government Reform* 3 (Mar. 27, 2003), https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-internet-sales-prescription-drugs/030327internetprescriptions.pdf; *see also* (continued…)

3

11.     FDA has issued several warning letters to websites selling unapproved and misbranded "semaglutide" products without a prescription.  FDA warned that these drugs "do not carry the same assurances of safety and effectiveness as those drugs subject to FDA oversight" and "may be contaminated, counterfeit, contain varying amounts of active ingredients, or contain different ingredients altogether."[4]

## C.     Defendants' Activities Violate Texas Unfair Competition Law

12.     Defendants violate Texas's unfair competition law by selling Defendants' unapproved semaglutide powder and products directly to consumers without a valid prescription..

13.     A defendant violates Texas's law prohibiting unfair competition through (1) an illegal act by defendant that (2) interfered with the plaintiff's ability to conduct its business.  *W. Rsrv. Medtec Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641, at *8 (S.D. Tex. May 13, 2019); *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).

14.     Defendants sell multiple unapproved semaglutide powder and products on their website, including "Semaglutide 10mg"[5] and "Semaglutide Peptide 5mg."[6]   Defendants' unapproved semaglutide powder and products are sold in powder form.  Defendants sell this powder directly to consumers without instructions on mixing or administration, requiring

---

Indictment, *United States v. Waite*, No. 14-cr-549, 2014 WL 12834797 (S.D. Tex. Nov. 6, 2014) (criminal prosecution for dispensing a prescription drug without a prescription); Indictment, *United States v. Willhite*, No. 9:02-cr-46, 2002 WL 34389633 (E.D. Tex. Nov. 20, 2002) (same).

[4]  *See, e.g.*, FDA, *Warning Letter to* www.semaspace.com (Oct. 2, 2023), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/wwwsemaspacecom-665848-10022023; FDA, *Warning Letter to Synthetix Inc. DBA Helix Chemical Supply* (Feb. 13, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/synthetix-inc-dba-helix-chemical-supply-668918-02072024.

[5] Aesthetic Maison, *Semaglutide 10mg*, https://aestheticmaison.com/product/semaglutide-10mg/.

[6] Aesthetic Maison, *Semaglutide Peptide 5mg*, https://aestheticmaison.com/product/semaglutide-peptide-generic-wegovy-peptide/.

consumers to guess as to how to administer Defendants' unapproved semaglutide powder and products.

15.     A "prescription drug" is defined under Texas law to include "a substance for which federal or state law requires a prescription before the substance may be legally dispensed to the public" or "a drug or device that is required by federal or state statute or regulation to be dispensed on prescription or that is restricted to use by a practitioner only."   Tex. Occ. Code Ann. § 551.003(36)(A), (C).

16.     Semaglutide is a prescription drug under Texas law.  *See* Tex. Occ. Code Ann. § 551.003(36)(A), (C).[7]  The Texas State Board of Pharmacy provides that prescription drugs "are drugs that require a prescription because they are considered to be potentially harmful if not used under the supervision of a licensed health care practitioner."[8]

17.     Defendants' practice of selling its unapproved semaglutide powder and products without requiring a prescription constitutes unfair competition.

18.     Defendants' unapproved semaglutide powder and products are intended to be used for weight loss in humans and, therefore, can only be distributed pursuant to a valid prescription. Because Defendants' unapproved semaglutide powder and products has the potential for harmful effects, it can only be lawfully dispensed upon the prescription of a "practitioner" as defined in

---

[7] *See, e.g.*, FDA, *Warning Letter to Synthetix Inc. DBA Helix Chemical Supply* (Feb. 13, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/synthetix-inc-dba-helix-chemical-supply-668918-02072024 (stating that semaglutide is a "prescription drug[] as defined in section 503(b)(1)(A) of the FD&C Act, 21 U.S.C. 353(b)(1)(A), in light of [its] toxicity or potential for harmful effects, methods of use, or collateral measures necessary for [its] use.").

[8] Tex. State Bd. Pharmacy, *Why do I need a prescription from a doctor for some medications and not for others?*, https://www.pharmacy.texas.gov/consumer/broch1.asp.

Section 551.003(34) of the Texas Occupations Code.[9]

19.    In an attempt to circumvent Texas law requiring that these drugs be distributed pursuant to a valid prescription, Defendants represent that certain of their unapproved semaglutide powder and products are intended for research use only and are not for human or animal use.  For example, below and attached as Exhibit A are true and correct images of a sample of Defendants' semaglutide powder and products, which say the product is "Research Use Only" and "Not for Human or Animal Consumption of Any Kind."





20.    Defendants do not represent that their unapproved semaglutide powder and products, "Semaglutide 10mg" and "semaglutide" sold in combination packs titled "Weight Loss + Hair Growth Combo pack," are for research use only and not intended for human use.

---

[9] The known risks associated with use of Novo Nordisk's FDA-approved medicines are reflected in its FDA-approved product labeling.



Exhibit B, Aesthetic Maison, *Semaglutide 10mg* (last visited May 23, 2024), https://aestheticmaison.com/product/semaglutide-10mg/.



Exhibit C, Aesthetic Maison, *Weight Loss + Hair Growth Combo pack (5% off) (Semaglutide, Copper Peptide)* (last visited May 23, 2024), https://aestheticmaison.com/product/weight-loss-hair-growth-combo-pack.

21.     Although Defendants state in the product description for the "Weight Loss Power Pack" that the unapproved semaglutide powder is for research purposes only, they note that this label is merely a technicality for compliance purposes, and that it can and has been used clinically: "The products will be labeled 'For Research Only'.  This is for FDA compliance, as they have not yet been approved for consumption. That being said, these have been treatments that both Meg and MJ have personally experimented with."

8



Exhibit D, Aesthetic Maison, *Weight Loss Power Pack – Semaglutide + Adipotide*, (last visited May 23, 2024), https://aestheticmaison.com/product/semaglutide/.

22.     Defendants' advertising and promotion of their unapproved semaglutide powder further demonstrates that it is intended to be used for weight loss in humans.

23.     For example, Defendants published a blog post on their website titled: "Semaglutide Injection: Your Ultimate Guide to Rapid Weight Loss," a copy of which is attached here as Exhibit E.  This post includes a link to Defendants' unapproved semaglutide powder and products and encourages customers to purchase its "semaglutide" "to embark on your weight loss

journey with confidence and convenience."[10]



24.   Defendants similarly advertise on social media that semaglutide can be used for weight loss, including in conjunction with a weight loss program.  The below images, attached hereto as Exhibit F, are a true and correct representation of information provided by Defendants to prospective customers via Instagram video.

---

[10] Aesthetic Maison, *Semaglutide Injection: Your Ultimate Guide to Rapid Weight Loss* (Jan. 22, 2024),   https://aestheticmaison.com/semaglutide-injection-your-ultimate-guide-to-rapid-weight-loss/.

 

@aesthetic.maison, Instagram (Jan. 17, 2023) (available at

https://www.instagram.com/reel/CnhZi7Th0NS/?hl=en).

25.    Defendants are aware that semaglutide products require a prescription.  In one of their promotional videos, they describe semaglutide as "an injectable prescription drug."  The below image, attached hereto as Exhibit F, is a true and correct representation of information provided by Defendants to prospective customers via Instagram video.



@aesthetic.maison, Instagram (Jan. 17, 2023) (available at

https://www.instagram.com/reel/CnhZi7Th0NS/?hl=en).

26.     Their advertising of their unapproved semaglutide powder and products demonstrates that they are targeting individuals for human use in weight loss and, therefore, must only dispense the product pursuant to a valid prescription.  Nonetheless, Defendants sell their unapproved semaglutide powder and products online without a prescription, direct to consumers, in violation of Texas's Prescription Law.  Tex. Occ. Code Ann. §§ 558.001(c); 551.003(34).

27.     Defendants are not qualified to prescribe their unapproved semaglutide powder and products to patients under Texas law.  Defendants are not licensed as a Class A or Class E pharmacy, which are the only entities authorized to dispense a drug under a prescription drug order in Texas.  Tex. Occ. Code Ann. § 560.051.

12

28.     Only someone licensed or registered to dispense or distribute prescription drugs may do so in Texas.  Texas Prescription Law provides that "a person may not dispense or distribute prescription drugs unless the person: 1) is a pharmacist; or 2) is otherwise authorized by this subtitle to dispense or distribute prescription drugs."  Tex. Occ. Code Ann. § 558.001(c).  The subtitle permits practitioners to dispense drugs without being a licensed pharmacist.  Tex. Att'y Gen. Op. MW-410 (1981).  Practitioner includes "a person licensed or registered to prescribe, distribute, administer, or dispense a prescription drug or device in the course of professional practice in this state, including a physician, dentist, podiatrist, or veterinarian."  Tex. Occ. Code Ann. § 551.003(34).

29.     Defendants' managing members are not licensed as pharmacists, physicians, dentists, podiatrists, or veterinarians in Texas.  Neither Aesthetic Maison nor Aesthetic Casa are licensed to dispense or distribute prescription drugs in Texas.[11]

**D.     Defendants Falsely Advertise Their Unapproved Semaglutide Powder and Products**

30.     Defendants' marketing and sales of their unapproved semaglutide powder and products are false and misleading in several respects.

31.     Defendants' claims regarding research on semaglutide and its efficacy are based on research of Novo Nordisk's FDA-approved medicines containing semaglutide, not of Defendants' unapproved semaglutide powder and products.

32.     For instance, Defendants' product description for their "Weight Loss Power Pack," which includes their "semaglutide 5 mg," relies on clinical trials of Plaintiff's FDA-approved semaglutide medicine, Wegovy®.  The product description subsequently notes that Defendants "do

---

[11]     *See* Tex. State Bd. Pharmacy, *Texas Pharmacy Search*, https://www.pharmacy.texas.gov/dbsearch/phy_search.asp.

not offer the brand name Wegovy." *See* Exhibit D.

33.    Similarly, a blog post on Defendants' website states that "Semaglutide injection has demonstrated substantial weight loss in clinical trials." *See* Exhibit E; ¶ 23, *supra*.  Defendants specifically link the words "Semaglutide injection" in this blog post sentence to their unapproved semaglutide powder and products by providing a hyperlink to Defendants' "Weight Loss Power Pack."  This statement is false because, on information and belief, Defendants' unapproved semaglutide powder and products have not undergone any clinical trials.  Rather, it is the clinical trials of *Plaintiff's* medicine that have demonstrated substantial weight loss.

34.    In addition, Defendants falsely equate Novo Nordisk's FDA-approved semaglutide medicines with their unapproved semaglutide powder and products.  In the product description for their "Weight Loss + Hair Growth Combo Pack," which includes their "semaglutide 5 mg," they state that "Semaglutide was originally created as a treatment for Type 2 Diabetes.  However, the Food and Drug Administration recently approved this medication for weight loss purposes.  It's a medication that's injected right into the body to help people lose weight and keep it off along with the use of a diet and exercise regimen." *See* Exhibit C.  This statement is false.  While the FDA has approved Novo Nordisk's semaglutide-based medicines, it has not approved Defendants' unapproved semaglutide powder and products, an entirely different product.

35.    Defendants further falsely equate their unapproved semaglutide powder and products with Novo Nordisk's Wegovy® by suggesting that their "Semaglutide Peptide 5mg" powder is a generic version of Wegovy®.[12]

---

[12]    Aesthetic Maison, Semaglutide Peptide 5mg (last visited May 23, 2024), https://aestheticmaison.com/product/semaglutide-peptide-generic-wegovy-peptide/.



36.     Such a comparison is false and misleading because the FDA has not approved any generic versions of Novo Nordisk's semaglutide medicines.

37.     Indeed, Defendants' statements are designed to conflate their unapproved semaglutide powder and products with Novo Nordisk's FDA-approved medicines. For example, Defendants advertise their unapproved semaglutide powder and products on Instagram as weight loss products that "you'll see in two different brand names of Ozempic and Wegovy. They're both the same medication, semaglutide." While stating this, Defendants' representative in the video is holding and pointing to Defendants' unapproved semaglutide powder and products. The below images, attached hereto as Exhibit G, are true and correct representations of information provided by Defendants to prospective customers via Instagram video.




 

@aesthetic.maison, Instagram (June 20, 2023) (available at

https://www.instagram.com/reel/CtunQ4uOUQT/?hl=en).

38.    Defendants' statements are likely to deceive customers into believing, erroneously, that its unapproved semaglutide powder and products are the same as Novo Nordisk's FDA-approved semaglutide medicines.  Defendants' statements are also likely to deceive customers into believing that its unapproved semaglutide powder and products are safe and effective by comparing them to Novo Nordisk's FDA-approved semaglutide medicine.

39.    Defendants knew or should have known that these statements were false and that they would be likely to induce customers to rely on these statements in order to purchase Defendants' unapproved semaglutide powder and products, believing them to be equivalent to Novo Nordisk's FDA-approved medicines containing semaglutide.

### E.    Plaintiff Has Been Injured by Defendants' Unlawful, Deceptive, and Unfair Competition

40.    Novo Nordisk is the only company in the United States with FDA-approved products containing semaglutide.

41.     Defendants sell their unapproved semaglutide powder and products to customers in Texas and other states without a prescription.  As a result of Defendants' unlawful, deceptive, and unfair competition, which jeopardizes public health, Defendants have interfered with Novo Nordisk's ability to conduct its business.  Specifically, as a result of Defendants' unlawful conduct, Novo Nordisk has and will continue to suffer harm to its goodwill and reputation.  Additionally, absent Defendants' unlawful and unfair actions, sales made by Defendants would and will have been made by Novo Nordisk; thus, Novo Nordisk has and will suffer harm in the form of lost sales and customers as a direct result of Defendants' unlawful acts and false advertising.  Novo Nordisk does not seek through this lawsuit money damages arising from Defendants' past practice of selling these unlawful drugs, but only to prevent Defendants from continuing this practice, which potentially puts patients at risk.

**F.     Plaintiff Seeks to Enjoin Defendants From Their Unlawful Practices**

42.     Novo Nordisk brings this action under the Lanham Act and Texas unfair competition law to stop Defendants from unlawfully marketing, selling, and distributing its unapproved semaglutide powder and products.  Novo Nordisk seeks a declaration that Defendants' business practices violate Texas unfair competition law and the Lanham Act, and entry of a preliminary and permanent injunction prohibiting Defendants from committing such violations. Novo Nordisk also seeks attorney's fees and court costs but does not seek monetary damages from Defendants' past violations of the Lanham Act or Texas unfair competition law.

## II.     THE PARTIES

43.     Novo Nordisk is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in New Jersey.

44.     Novo Nordisk promotes, offers, and/or sells FDA-approved semaglutide-based products—Wegovy®, Ozempic®, and Rybelsus®—throughout the United States.  Novo Nordisk is

17

the only company in the U.S. with FDA-approved products containing semaglutide. FDA has not approved any generic versions of semaglutide. Novo Nordisk does not sell its semaglutide active pharmaceutical ingredient ("API") to Defendants or any other online retailers for the purpose of selling unapproved semaglutide products.

45.     Novo Nordisk and/or its parents and affiliates have invested significant time and resources to research, develop, manufacture, and test Wegovy®, Ozempic®, and Rybelsus® in order to obtain regulatory approval from FDA to market these drugs.

46.     Aesthetic Maison is a legal entity that was formerly organized as a limited liability company existing under the laws of Nevada, though it recently had its LLC status revoked by Nevada. The managing member of Aesthetic Maison is Mandy Rasmussen. Its website, www.aestheticmaison.com, lists its founders as Mandy and Megan.[13] Upon information and belief, Aesthetic Maison drop ships its products, including its unapproved semaglutide powder and products, to customers from shipping centers in South Korea and Mexico. It uses its registered agent's address in Nevada as the return address for shipments. Upon information and belief, it does not maintain its own physical office space in Nevada, but instead maintains a satellite office in Texas through its founder, Megan King.

47.     Aesthetic Casa is a limited liability company organized and existing under the laws of Florida. The managing member of Aesthetic Casa is Megan King, who upon information and belief is the same Megan King that is the founder of Aesthetic Maison. Upon information and belief, it does not maintain its own physical office space in Florida. Upon information and belief, Aesthetic Casa processes the payments received from customers for products purchased from www.aestheticmaison.com, from Megan King's address at 3915 Schlottman Road, Brenham,

---

[13] Aesthetic Maison, https://aestheticmaison.com/about-us/.

18

Texas.

48.     Upon information and belief, Aesthetic Casa is the legal entity through which Megan King and Mandy Rasmussen conduct business through the www.aestheticmaison.com website, and Aesthetic Maison and Aesthetic Casa are used interchangeably by Megan King and Mandy Rasmussen to conduct business.  For example, Aesthetic Casa processes payments received from customers for purchases made on www.aestheticmaison.com.  Megan King and Mandy Rasmussen have ignored the corporate form and conduct their unlawful business through both entities without regard to the distinctions between the two.

### III.     JURISDICTION AND VENUE

49.     The Court has subject matter jurisdiction over the Lanham Act cause of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), and supplemental jurisdiction over the state law cause of action pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

50.     This Court has personal jurisdiction over Defendants.  Defendants maintain a principal place of business in Texas where, upon information and belief, Defendants direct, control, and coordinate their business activities, such as by processing payments for orders received on its website of its products, including its unapproved semaglutide powder and products and products purporting to be authentic Novo Nordisk medicines.  Because Aesthetic Maison and Aesthetic Casa are used interchangeably by Megan King and Mandy Rasmussen, and the activities of the venture take place in Texas, both entities are subject to jurisdiction in Texas.

51.     Venue in this District is proper under 28 U.S.C. § 1391(b).

## IV.   FIRST CAUSE OF ACTION

**(Defendants' False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B))**

52.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1–51, above, as if fully stated herein.

53.     Defendants' practices, as described in this Complaint, constitute false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

54.     Defendants have violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in their commercial advertising or promotion that misrepresent the nature, characteristics, and/or qualities of Defendants' unapproved semaglutide powder and products, as set forth above.

55.     The above-described acts of Defendants, if not enjoined by this Court, are likely to deceive members of the general public.

56.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff.

57.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

58.     By reason of Defendants' acts as alleged above, Plaintiff has suffered and will continue to suffer injuries, including injury to Plaintiff's business reputation.  However, Plaintiff's remedies at law are not adequate to compensate for all the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to entry of preliminary and permanent injunctive relief requiring Defendants to cease their false and misleading advertising and promotion and unfair competitive

20

practices.

59.     This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## V.     SECOND CAUSE OF ACTION

### (Violation of Texas Unfair Competition Law)

60.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1–59, above, as if fully stated herein.

61.     Defendants have engaged in unfair competition through their violation of Texas's Prescription Law, Tex. Occ. Code Ann. §§ 558.001(c); 551.003(34), by selling their unapproved semaglutide powder and products for use in weight loss without a prescription, constituting an illegal act.  All other suppliers, like Novo Nordisk, are subject to this same Texas Prescription Law for "semaglutide" products intended for use in humans.

62.     Defendants' violation of Texas law of selling their unapproved semaglutide powder and products for use in weight loss without a prescription has interfered with Plaintiff's ability to conduct its business, by allowing Defendants to compete unfairly with Novo and other suppliers of semaglutide.

63.     Defendants have also engaged in unfair competition through their violation of the Lanham Act, by selling their unapproved semaglutide powder and products and by engaging in false advertising that deceives and harms patients.

64.     Defendants' violation of Texas law has and will continue to interfere with Plaintiff's ability to conduct its business because it has and will continue to harm Plaintiff's goodwill and reputation and has caused Plaintiff to lose sales and customers.

65.     Plaintiff seeks a declaration that Defendants' business practices constitute unfair competition by advertising, distributing, and selling prescription drugs without a prescription.

Plaintiff also seeks an injunction prohibiting Defendants from committing such violations.

66.     Plaintiff also seeks attorney's fees and court costs pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

### VI.     CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1.     That the Court enter a judgment against Defendants that Defendants have:

    a.     Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a); and

    b.     Violated Texas unfair competition law.

2.     That the Court enter judgment that each of the above acts was willful.

3.     That the Court preliminarily and permanently enjoin and restrain Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert or conspiracy with or affiliated with Defendants from:

    a.     Continuing the unlawful and unfair business practices alleged in this complaint;

    b.     Advertising, stating, or suggesting that any unapproved semaglutide powder and products, including but not limited to any unapproved semaglutide powder and products that either are available, directly or indirectly, from or through Defendants or the use of which or access to which is facilitated by, or with the involvement of, Defendants:

        i.     Are sponsored by or associated with Novo Nordisk;

        ii.     Are approved by FDA; have been reviewed by FDA for safety, effectiveness, or quality; or have been demonstrated to FDA to be safe or effective for their intended use;

iii.    Achieve or have been shown to achieve certain therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines; relying on or making reference to the therapeutic results, effects, or outcomes of Novo Nordisk's medicines; or suggesting that any unapproved semaglutide powder and products are interchangeable or equivalent to genuine Novo Nordisk medicines;

iv.    Are Novo Nordisk medicines, or are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by FDA, or is the same in any ingredient in any Novo Nordisk medicine;

c.    Engaging in any unfair competition with Plaintiff; and/or

d.    Engaging in any deceptive acts or practices.

4.    That the Court require Defendants to engage in corrective advertising.

5.    That the Court award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, Tex. Civ. Prac. & Rem. Code § 37.009, and any other applicable provisions of law.

6.    That the Court award Plaintiff the costs of suit incurred herein.

7.    That the Court award such other or further relief as it may deem just and proper.

23

Dated: May 30, 2024

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Randall L. Christian*
    Randall L. Christian
    Texas Bar No. 00783826
    Southern District No. 15935
    Jonathan L. Smith
    Texas Bar No. 24088436
    Southern District No. 3632192

2901 Via Fortuna Drive, Suite 500
Austin, Texas 78746
Tel.: (512) 874-3800
Fax: (512) 874-3801
Randall.Christian@bowmanandbrooke.com
Jonathan.Smith@bowmanandbrooke.com

Gregory L. Halperin
(*pro hac vice application forthcoming*)
**COVINGTON & BURLING LLP**
The New York Times Building,
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1166
ghalperin@cov.com

Michael X. Imbroscio
(*pro hac vice application forthcoming*)
Amee Frodle
(*pro hac vice application forthcoming*)
**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
mimbroscio@cov.com
afrodle@cov.com

***Attorneys for Plaintiff***
***NOVO NORDISK INC.***

24